**2IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| BERENICE SUEIRO VÁZQUEZ, <u>et al.</u>, |
| **Plaintiffs** |
| **v.** |
| ENID TORREGROSA DE LA ROSA, <u>et al.</u>, |
| **Defendants** |

**CIVIL NO.** 02-2674(JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D. J.

On November 13, 2002, plaintiffs Berenice R. Sueiro-Vázquez ("Sueiro"), Wilfredo Aponte-Pagán ("Aponte"), and Astrid A. Cappas ("Cappas") brought suit under 42 U.S.C. §1983 against defendants Enid Torregrosa De la Rosa ("Torregrosa"), Elizabeth Solá ("Solá"), Verónica Álvarez ("Álvarez") and Francisco Catalá ("Catalá"). Plaintiffs claim that they were the victims of adverse employment actions due to their political affiliation, all in violation of the First, Fifth and Fourteenth Amendment of the United States Constitution and Article II, sections 1, 6 and 7 of the Puerto Rico Constitution. With the exception of Torregrosa, who is also sued in her official capacity for purposes of injunctive relief, all the co-defendants are sued in their individual capacities. (Docket No.

1).

On February 18, 2004, the defendants filed a Motion for Summary Judgment. (Docket No. 35).  On April 28, 2004, the plaintiffs submitted a memorandum of law in opposition to defendants' motion. (Docket No. 57).  The Motion for Summary Judgment was subsequently referred to Magistrate-Judge Justo Arenas for the submission of a Report and Recommendation (Docket No. 71).

On December 13, 2004, Magistrate-Judge Arenas issued a Report and Recommendation to deny defendants' Motion for Summary Judgment(Docket No. 73). After reviewing the Magistrate's findings, as well as defendant's timely objections, the Court hereby **ADOPTS** the Report and Recommendation.

**STANDARD OF REVIEW**

<u>**1. Review of Magistrate-Judge's Report and Recommendation**</u>

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate-Judge for a Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate-Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order.  <u>See</u> 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate-Judge's Report and Recommendation, the Court shall make a <u>de novo</u> determination of those portions of the report or

specified proposed findings or recommendations to which specific objection is made.  See <u>United States v. Raddatz</u>, 447 U.S. 667, 673 (1980); <u>Lopez v. Chater</u>, 8 F.Supp.2d 152, 154 (D.P.R. 1998).  The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate." <u>Alamo Rodríquez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F. Supp2d 144, 146 (D.P.R. 2003) (quoting, <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985). However if the affected party fails to timely file objections, "'the district court can assume that they have agreed to the Magistrate's recommendation.' <u>Id.</u>

**2. Motion for Summary Judgment**

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>See also</u> <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52. (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." <u>See</u> Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the burden of showing the absence

of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine".  "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

Civil No. 02-2674 (JAG)                                          5

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## FACTUAL BACKGROUND

As mandated by First Circuit's standards, the Court states the facts in the light most favorable to the party opposing summary judgment. Acosta-Orozco v. Rodriguez de Rivera, 132 F.3d 97, 98 (1997).

The State Historic Preservation Office ("SHPO") was originally created by an Executive Order issued by the Governor of Puerto Rico on July 31, 1985.  The Office was part of the Governor's Office and, as such, its personnel was considered to be within the realm of trust or "confidential" service.  On August 21, 2000, the governor of Puerto Rico signed into law Act No. 183 ("Act No. 183"), which restructured the SHPO into a public agency of the Commonwealth of Puerto Rico.  Under Act No. 183, the SHPO consisted of 41 employment positions, of which 37 were career positions, and 4 were trust positions. Prior to the restructuring, the SHPO had 28 trust employee positions, 3 career positions and 10 vacant positions.  It is undisputed that all Plaintiffs worked at the

Civil No. 02-2674 (JAG)                                                6

SHPO.

On August 31, 2000, pursuant to Act No. 183, Sueiro and Aponte's positions were reclassified as career positions. On September 6, 2000, Cappas began service at the SHPO as a career employee. At that time, Sueiro held the position of Historic Preservation Manager, Cappas held the position of Human Resources Officer, and Aponte was the Office's Information Systems Specialist. Plaintiffs claim to be affiliated to and openly identified with the New Progressive Party ("NPP"), which controlled Puerto Rico's central government between January 1993 and January 2001.

In January of 2001, the Hon. Sila M. Calderón, of the Popular Democratic Party ("PDP"), was sworn in as Governor of Puerto Rico. Shortly thereafter, defendant Torregrosa was appointed as Executive Director of the SHPO. Although Torregrosa denies being a member of the PPD, she admits to agreeing with the PDP administration's government plan. Co-defendants Solá, Álvarez and Catalá, Deputy Director, Human Resources Director and Principal Information Officer, respectively, were all appointed by Torregrosa. Solá and Álvarez are affiliated to and openly identified with the PDP. Catalá alleges that he is affiliated with the Puerto Rican Independence Party (PIP).

On February 1, 2002, upon Torregrosa's request, the Department of Justice issued a legal memorandum concluding that plaintiffs

Sueiro and Aponte's appointments to career positions were illegal
under the Public Personnel Act of 1975.

The following are the specific factual allegations made by
each individual plaintiff.

A.  Plaintiff Sueiro

Sueiro holds a degree in architecture from the University of
Miami.  She started working at the SHPO in 1994 as a staff
architect.  In October of 1995, Sueiro was promoted to the position
of Deputy Advisor II; thereafter, she was promoted to Deputy
Advisor III, both being trust positions.  On August 31, 2000,
pursuant to Act No.183, plaintiff's position was reclassified as
Historic Preservation Manager, and granted career status.

On or about January 2001, after the change of administration,
Sueiro allegedly began to be systematically stripped of her duties
and responsibilities as Historic Preservation Manager.  For
instance, Sueiro alleges in the complaint that she was physically
relocated three times in a matter of months, that she was blocked
from access to a computer; that she was not allowed communication
with the employees under her supervision; that she was denied
access to information necessary for the performance of her duties;
that no administrative assistance was assigned to her; and that she
got no response to her requests to attend training seminars.

On July 30, 2001, the defendants informed Sueiro of their
intentions to reclassify her into the position of Office

Civil No. 02-2674 (JAG)                                                8

Coordinator because the Historic Preservation Manager position was going to be eliminated. Such changes never occurred. Finally, on February 8, 2002, Torregrosa terminated Sueiro from her position as Historic Preservation Manager based on the Department of Justice's personnel memorandum. She claims that her discharge responds to her being affiliated and openly identified with the NPP.

B. <u>Plaintiff Aponte</u>

Aponte began to work at the SHPO in 1995. In 1997, he was named Special Assistant Advisor, a trust position within the SHPO. On August 31, 2000, pursuant to Act No. 183, Aponte was reclassified as an Information Systems Specialist at the SHPO, and granted career status. Aponte claims to have suffered adverse employment actions after the change of administration in 2001. He contends that he was systematically stripped of the duties and responsibilities set forth in his job description despite his best efforts to meet and communicate with the defendants in order to stop the discriminatory conduct.

In September of 2001, Torregrosa appointed Catalá to the position of Principal Information Systems Officer. Aponte alleges that after Catalá's appointment, his duties and responsibilities were gradually taken away to the point of denying him access to computer codes that were necessary for the performance of his job. Furthermore, Aponte was allegedly ordered to request authorization at all times from Torregrosa, Solá or Catalá before engaging in any

Civil No. 02-2674 (JAG)                                             9

significant job-related task.   Finally, Aponte alleges that he filed an administrative appeal challenging the removal of his functions, but that such move only triggered an even more hostile work environment.  Aponte was terminated by co-defendant Torregrosa on September 16, 2002, as per the Department of Justice's memorandum.   He claims that his discharge responds to his being affiliated and openly identified with the NPP.

C.  Plaintiff Cappas

Cappas began her employment with the SHPO on September 6, 2000, after transferring from Puerto Rico's Police Department, where she held the position of Personnel Technician V, a career position.  She has been a public employee for nearly 21 years and her work experience is related to the human resources area.  At the SHPO, Cappas holds the position of Human Resources Officer, a career position.

Cappas argues that after the change of administration in 2001, she has been systematically stripped of her duties and responsibilities as Human Resources Officer. On October 1, 2001, Torregrosa allegedly took away from Cappas the custody of all personnel files. Subsequently, Torregrosa created a trust position titled Human Resources Director.   In June  2002, Torregrosa appointed co-defendant Álvarez to such position.  Cappas alleges that by that time, Torregrosa had taken away approximately 95% of Cappas' duties and responsibilities and had Cappas performing the

duties of a payroll and benefits technician, a low-level position within the SHPO's structure. Cappas was also dismissed from the Government Ethics Committee of which she was a member.   According to Cappas, the defendants acted in concert to discriminate against her insofar as the above-described employment actions constituted a *de facto* demotion and were motivated by her being affiliated and openly identified with the NPP. Cappas still maintains her position at the SHPO.

**DISCUSSION**

1. <u>Due Process Claims</u>

The Due Process Clause guarantees public employees with a property interest in continued employment the right to a pre-termination hearing. <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 542 (1985). The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. <u>See, e.g., Correa-Martinez</u>, 903 F.2d at 53 (*citing* <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)). Under Puerto Rico law, a career position is a constitutionally protected property interest. <u>Kauffman v. Puerto Rico Tel. Co.</u>, 841 F.2d 1169, 1173 (1st Cir. 1988); <u>Arizmendi-Corales v. Javier Rivera</u>, 176 F. Supp.2d 114, 119 (2001). However, employees in career positions that were illegally hired are "neither invested nor entitled to the due process protections which inure to their legally hired counterparts"

Civil No. 02-2674 (JAG)                                            11

Correa-Martinez, 903 F.2d at 54 *(citing* Rosario Torres v. Hernandez Colon, 889 F.2d 314, at 319 (1st Cir. 1989)).

Co-defendants do not deny that Sueiro and Aponte were terminated without first having been afforded notice and a pre-termination hearing. However, co-defendants contend that Sueiro and Aponte do not have a cognizable property interest in their position because their appointments were null ab initio. The co-defendants also argue that Cappas fails to establish a cognizable due process claim because she still holds her employment position and is actually performing her duties.  Magistrate-Judge Arenas addressed the issue of the legality of Sueiro and Aponte's career positions and held that he was prevented from concluding, as a matter of law, that the appointments were illegal under Puerto Rico's Public Personnel Act. See P.R. Laws Ann. Tit. 3, §1301 et seq.  Since the Magistrate-Judges's recommendation on this matter was objected to by the co-defendants, the Court shall address this issue de novo.

As previously mentioned, Act No. 183 was enacted in the year 2000.  The law designated the SHPO as an "Individual Administrator" ascribed to the Governor's Office, pursuant to the provisions of Puerto Rico Public Service Personnel Act ("Personnel Act").  Act No. 183's statement of motives provides that the act was enacted to ensure that the work of the SHPO continues in an uninterrupted manner, allowing for the creation of career positions to prevent a turnover in office employees every time a new government is

Civil No. 02-2674 (JAG)                                              12

elected. (<u>See</u> Statement of Motives of Act. No. 183; Docket No. 67, exh. 9, 10).[1]

Article 2 of the Act states, in pertinent part, that the human resources administration shall be conducted in accordance with the Personnel Act, <u>supra</u>. Article 2 also provides that the Executive Director of the SHPO, a position appointed by the Governor, "shall select and appoint the professional, technical, secretarial, and office personnel he/she deems necessary for the adequate operation thereof." <u>Id</u>. Likewise, the Director shall determine the qualifications, requisites, functions and tasks in accordance with the provisions of the Personnel Act. Article 5(b) of the Act states that the "personnel will maintain all the rights acquired to the date of effectiveness of the Act, as well as the rights, privileges, obligations, and status with regard to any pension system, retirement system, and savings and loan funds to which they may be affiliated." <u>Id</u>.

The defendants argue that Sueiro and Aponte's transfer from the trust service into the career service was made in violation of Section 5.11 of the Personnel Act, which provides in pertinent part

---

[1] Act No. 183 responded to the concerns expressed by the Chief of the Heritage Preservation Services of the United States National Park Services in a letter to the Governor of Puerto Rico. The letter pointed out that since 1986, there was a major management control problem at the SHPO, which was attributed to the numerous layoffs and the complete turnover of professional staff at that office every time a new governor was elected.

Civil No. 02-2674 (JAG)                                          13

as follows:

> "(7) The change in category of a confidential position to
> a career position shall only be authorized <u>when a change
> occurs in the functions or in the organizational
> structure of the agency so justifying it</u>, if the position
> is vacant, or, if not vacant, if the incumbent may occupy
> it subject to the following conditions:
> a) That he meets the requirements established for the
> class of position;
> b) that he has occupied the position for a period of time
> no less than the time corresponding for the probationary
> period for the class of position;
> c) that he passes or has passed the test established for the
> class of position, and
> d) that the appointed authority certifies that his
> services have been satisfactory. P.R. Laws Ann. Tit. 3
> §1351(7)(emphasis added).

According to the foregoing, a change in category is only
authorized under three circumstances, to wit: 1) when a change
occurs in the functions or in the organizational structure of the
agency so justifying it; 2) if the position is vacant; or 3) if the
position is not vacant, if the incumbent satisfies the four
criteria enumerated in the statute. The co-defendants argue that
plaintiffs Sueiro and Aponte do not satisfy several of Section
5.11's requirements, namely that the change in their positions was
not justified by a change in the functions or structural
organization of the agency, that they were not in the position for
the required time period prior to the change in status, and that
they did not take the requisite exam. Furthermore, the co-
defendants allege that Sueiro and Aponte's termination was
supported by an opinion of the Secretary of Justice issued after an
evaluation of their appointments. Hence, the co-defendants

Civil No. 02-2674 (JAG)                                                14

conclude that given the illegality of their appointments, plaintiffs lacked a valid property interest in their positions.

Plaintiffs Suerio and Aponte counter this by arguing that Act No. 183 expressly gave permanent career status to those employees working at the SHPO at the time the law was enacted. Furthermore, the plaintiffs allege that the co-defendants' arguments are meritless in light of the fact that Act No. 183 changed the organizational structure of the SHPO.

The Court agrees with Sueiro and Aponte's arguments. First, it appears that Act No. 183 indeed changed the organizational structure of the SHPO by detaching it from the Central Government Administration, establishing it as an Individual Administrator, and creating career positions to minimize staff turnover. Second, it is an undisputed fact that the Sueiro and Aponte's reclassification to career status occurred pursuant to Act No. 183's mandate. To this, co-defendants only aver that Act No. 183, nonetheless, required all personnel action to comply with Section 5.11 of the Personnel Act. Co-defendants do not elaborate, however, on how that section's requirements for the reclassification of public employees were to be reconciled with the Act No. 183's specific purpose of restructuring the SHPO and giving permanent status to its employees.[2] Or, at least, explain why the SHPO's restructuring

_____

[2]

The Puerto Rico Supreme Court has engaged in such analysis when the Personnel Act's dispositions conflict with the mandates of newly

Civil No. 02-2674 (JAG)                                          15

under Act No. 183 does not comply with the "change in structure"
provision for reclassification under the above cited Section 5.11
of the Personnel Act.

Consequently, the Court may not conclude, as a matter of law,
that plaintiffs Sueiro and Aponte's reclassification to career
status was illegal.[3]  Without determining this, the Court cannot
decide whether plaintiffs Aponte and Sueiro were entitled to the
pre-termination hearing that was not afforded to them under the
pretense that their reclassifications were null and void.
Therefore, although a jury may determine ultimately that Suiero and
Aponte's appointments were indeed illegal, the Court cannot grant
summary judgment in favor of defendants on this issue because the
record, viewed in the light most favorable to the plaintiffs, does
not support that they are entitled to it as a matter of law.

Notwithstanding, the Court finds that plaintiff Cappas does
not have a cognizable due process claim because her position and

_____

minted legislation or regulation.  See e.g  Reyes-Coreano v.
Tribunal Superior, 110 D.P.R. 40 (1980). In Reyes-Coreano, the
Puerto Rico Supreme Court upheld a personnel transaction that was
in conflict with the electoral moratorium mandated by Art. 4.7 of
the Personnel Act, when such transaction was performed pursuant to
a clear legislative mandate.  Specifically, the transaction was
made in accordance with the agency's new personnel regulations,
enacted  pursuant to legislation that directed public agencies to
reclassify a substantial number of confidential public employees to
career status. Id., at 55.

[3]

Given that plaintiffs have not moved for a declaratory or summary
judgment on this issue, the Court is only ruling on the
defendants' request for summary judgment.

Civil No. 02-2674 (JAG)                                          16

salary have remained unchanged. See Consejo de Educación de la U.P.R. v. Rosselló, 137 D.P.R. 83, 110 (1994)(under Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform); Rosado de Velez v. Zayas, 328 F.Supp.2d 202 (D.P.R. 2004). Accordingly, the Court dismisses Cappas due process claims against all co-defendants.


2. First Amendment Claims

     In his Report and Recommendation, Magistrate-Judge Arenas concluded that all plaintiffs produced sufficient evidence to establish a prima facie claim of political discrimination and that defendant's proffered non-discriminatory reason [the Dept. of Justice Memorandum] was insufficient to rebut plaintiffs' case. (See R&R at 21). In their objections, the co-defendants argue that this portion of the Report and Recommendation fails to set forth the factual basis that supports plaintiffs' prima facie case. Co-defendants also renewed their summary judgment allegations to challenge plaintiffs' political discrimination claims, and their Mt. Healthy defense, to wit: 1) that Sueiro and Aponte's terminations were not politically motivated, insofar as it was a decision based on the Secretary of Justice's conclusion that their appointments were illegal and 2) Cappas' allegations of illegal "stripping" of functions do not meet the unreasonably inferior" criteria under Agosto v. Aponte-Roque, 889 F.2d 1209 (1st Cir.

Civil No. 02-2674 (JAG)                                           17

1989).

    Upon de novo examination, the Court will not depart from the

Magistrate-Judge's recommendation of denying summary judgment.

After a First Amendment analysis, the Court finds no error of fact

or law in Magistrate-Judge Arenas' conclusions.

    It is well settled that political patronage restraints the

freedom of belief and association, core activities protected by the

First Amendment. Cosme-Rosado v. Serrano-Rodriguez, 196 F.Supp.2d

117, 122 (D.P.R. 2002) (citing Elrod v. Burns, 427 U.S. 347

(1976)). A prima facie case of political discrimination is

established by demonstrating that plaintiff (1) engaged in

protected conduct and (2) that such conduct was a substantial or

motivating factor in the adverse employment decision. See Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287

(1977).  To meet this burden, plaintiffs need not produce direct

evidence (a so-called "smoking gun") of a politically based

discriminatory animus. Acosta-Orozco v. Rodríguez de Rivera, 132

F.3d at 97, 101-102 (1st Cir. 1997).  Plaintiffs may establish a

discriminatory animus with circumstantial evidence alone.  Id.

However, plaintiffs must always show that there is a causal

connection linking defendants's conduct to their political beliefs.

LaRou v. Ridlon, 98 F.3d 659, 662 (1st Cir. 1996).

    Once a prima facie case has been established, then the

employer is given an opportunity to demonstrate that it would have

Civil No. 02-2674 (JAG)                                        18

taken the same action regardless of plaintiff's political beliefs.
Mt. Healthy, 429 U.S. at 287.  This burden-shifting framework goes
directly to causation. Padilla-García v. Rodríguez, 212 F.3d 69, 74
(1st Cir. 2000).  On top of several subsidiary layers of causation,
however, there is an ultimate constitutional question of "but for"
causation.  Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 417
(1979).  That is, even when a public employee shows that protected
conduct was a "motivating factor" in an adverse employment
decision, the employer still prevails by showing that it would have
reached the same decision in the absence of the protected conduct.
Crawford-El v. Britton, 523 U.S. 574, 593 (1998).

     In Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 131 (1st
Cir. 2004), a case in which defendants also claimed that
plaintiffs's termination was due to the illegality of their
appointment, the First Circuit held that

          defendants here were entitled to defeat liability by
     showing that plaintiffs' positions were obtained in violation
     of Puerto Rico law and that, even if political animus was a
     factor, defendants would have taken corrective action anyway
     against every employee whose position was obtained in
     violation of law.  If there is no dispute that the positions
     were obtained in violation of Puerto Rico law, then the only
     question left is whether defendants would have fired all
     employees holding such positions in any event.  If defendants
     demonstrated that they in fact have a practice of taking
     corrective action against all employees in such positions, or
     could otherwise show that they would have taken the corrective
     action anyway, then they were entitled to prevail.

     In essence, in order to defeat the plaintiffs prima facie
case, a defendant must not only prove a neutral basis for the

Civil No. 02-2674 (JAG)                                             19

adverse employment action, but also that such basis is uniformly
applied.  See Acevedo-García v. Vera-Monroig, 204 F.3d 1, 10-11
(1st Cir. 2000)(defendants did not prevail because otherwise lawful
layoff plan was applied in a discriminatory manner).  In other
words, simply showing that an appointment was illegal under local
law does not suffice to meet defendants' Mt. Healthy burden.
Sánchez López, 375 F.3d at 133.

     According to the foregoing, and viewing the facts in the light
most favorable to the plaintiffs, the Court finds that a rational
fact-finder could conclude that plaintiffs established a prima
facie case of political discrimination.

     As to plaintiff Sueiro, it is undisputed that Mrs. Torregrosa,
as the newly appointed Director of the SHPO, wanted to make changes
in the organizational structure of that office. (See Docket No. 35
at Exh. 5; Docket No. 51, Exh. 6 at p. 8). In fact, the Central
Government authorized the changes. (See Docket No. 35 at Exh. 6).
Sueiro argues that those changes encompassed the elimination of her
position, with the intention of assigning her to a trust position.
(Docket No. 57 at 25).  Sueiro further states that she was not
allowed to supervise her personnel, and was practically replaced by
co-defendant Solá in that capacity. Id.  Furthermore, that even
though it was known that she was a member of the NPP, during the
thirteen months Sueiro worked at the SHPO under the PDP
administration, co-defendant Solá gave her the PDP's political

Civil No. 02-2674 (JAG)                                                20

platform with instructions to use it as part of her work.  Finally,
Sueiro claims that she was dismissed based on her political
affiliation to the NPP.

Plaintiff Aponte also argues that he was subject to
discrimination based on his political belief.  Specifically, he
states that his duties were removed after the change of
administration, that he was visibly mistreated by co-defendant
Solá, and that his desk was relocated. (Docket No. 57 at 26).   He
further states that co-defendant Catalá reprimanded him for wearing
an American flag lapel pin, and that at some point in time he could
only work if defendants Torregrosa, Solá or Catalá were close to
him.  Id.  Finally, Aponte claims that he was fired because of his
being a member of the NPP.  Id.

Plaintiff Cappas alleges that she was not allowed to perform
the duties as they are contained in her job description, and that
the two persons affiliated to the PDP (defendants Álvarez and
Bonet) started to do the work that was assigned to her. (Docket No.
57 at 7).  She claims that she was subject to discrimination
because of her being a member of the NPP.

With respect to Sueiro and Aponte's discharges, the only
reason proffered by the defendants to justify the adverse
employment action is the alleged illegality of their appointments
to career positions.  Nothing else is submitted in an attempt to
show that political affiliation was not the ultimate motivating

factor for the adverse action. Hence, the Court adopts Magistrate-Judge's Arenas conclusion to the effect that such justification is not enough to rebut the <u>prima facie</u> case established by plaintiffs. Not only the legality of such reclassifications is still in question, as the Court concluded in the previous section,[4] but defendants, assuming <u>arguendo</u> that their appointments were indeed illegal, also failed to establish that they have a practice of taking corrective actions against all employees in such circumstances.  <u>See Sánchez-López</u>, 375 F.3d at 131.

Plaintiffs correctly point out that there is no evidence in the record to establish that defendants took the same corrective action against all the employees whose status was changed to career employees in alleged violation of Puerto Rico's Personnel laws. (Docket No. 77 at 18). Sueiro and Aponte claim, to the contrary, that only they were fired on the grounds of nullity of their reclassifications.  Therefore, as to plaintiffs Sueiro and Aponte, defendants failed to meet their burden under the <u>Mt. Healthy</u>'s analysis.

As to plaintiff Cappas, the defendants simply deny any removal

---

[4]

At this juncture, the Court must clarify that the plaintiffs's First Amendment claims are not dependent on the merits of their due process claims.  <u>Acosta-Orozco v. Rodríguez de Rivera</u>, 132 F.3d at 97, 104 (1st Cir. 1997); <u>Arizmendi-Corales</u>, 176 F.Supp.2d at 120. That is, whether or not plaintiffs had a property interest in their employment is irrelevant to their First Amendment claim of political discrimination.  <u>See Acevedo-Diaz v. Aponte</u>, 1 F.3d 62, 69 n. 5 (1st Cir. 1993).

Civil No. 02-2674 (JAG)                                                    22

of her functions and therefore deny any political discrimination.

However, Cappas claims that she was stripped of her duties as Human

Resources Officer and that two persons affiliated to the PDP are

now performing her duties.  (Docket No. 57, Attachment 1 at 7).

Under First Circuit standards, at this stage, the Court must assume

Cappas' contentions to be true.  <u>Cruz-Queipo v. Hospital Español

Auxilio Mutuo de Puerto Rico</u>, No. 04-2375, slip op. at 9 (1st Cir.

July 27th, 2005).[5]   In the context of a motion for summary

judgment, credibility determinations are for the fact-finder at

trial, not for the Court.  <u>Simas v. First Citizens' federal Credit

Union</u>, 170 F.3d 37, 49 (1st Cir. 1999).

     In sum, plaintiffs have succeeded in establishing trial worthy

issues as to whether the adverse employment actions were

substantially motivated by their political affiliation. <u>See</u> <u>Mulero-

Rodriguez v. Ponte Inc.</u> 98 F.3d 670, 677 (1st Cir.

1996)(emphasizing that determinations of motive and intent are

questions better suited for the jury).

### V. Conclusion

     The Court has thoroughly reviewed the record <u>de novo</u> and can

find no clear error of law or fact in Magistrate-Judge Arenas'

Report and Recommendation. Therefore, this Court **ADOPTS** the Report

--------------------------------------------------

[5] 2005 WL 1761591

Civil No. 02-2674 (JAG)                                          23

and Recommendation and **DENIES** Defendants' Motion for Summary

Judgment.

    It is so ORDERED.

    In San Juan, Puerto Rico, this 5th day of August 2005.


                              S/Jay A. Garcia-Gregory
                              JAY A. GARCIA-GREGORY
                              United States District Judge